UNION DRAY LINE COMPANY vs. JOEL E. HURT.

When cotton is to be transported through the medium of two common carriers, connecting with one another, it is the duty of him who performs his part of the transportation first, to deliver it to his successor, by at least placing it where it is easily accessible to him ; but while the first cannot discharge himself by a less delivery than this, the next may bind himself by accepting a less.

Case, in Muscogee Superior Court. Tried before Judge WORRILL, at November Term, 1859.

This was an action brought by Joel E. Hurt, for the use of Alexander H. Sheffard, against the Union Dray Company, to recover the value of about 35 bales of cotton, alleged to have been received by defendant as common carriers, and which cotton was burnt and destroyed after it came into defendant's possession.

The defense was, that said cotton had been sent by the Mobile and Girard Railroad from Mr. Hurt's plantation, consigned to Stewart, Gray & Co., Warehousemen in the city of Columbus; that upon its arrival at the depot in Girard, opposite Columbus, it had been thrown off the cars, and while lying there on the side of the road, and before its delivery to defendant by the railroad company, and before defendant had accepted or received the same, it was burnt by the fire which consumed the railroad depot, etc., and that defendant was therefore not liable for the loss of said cotton.

The cotton was burnt the second night after the day upon which it was thrown out.

After the testimony was closed, counsel for defendant asked the Court to charge the jury as follows :

1st. That the Mobile & Girard Railroad Company's liability continued until they made a complete delivery of the cotton to the consignee, or their authorized agents, at such points as by their contract they were bound to deliver.

2d. That to constitute a complete delivery, the Mobile & Girard Railroad was bound to leave the cotton in a place where the consignee, or his agent, could conveniently examine it—count the bales, and carry them away.

3d. That if this cotton was promiscuously thrown among 200 or 300 bales of cotton, the consignee had a right to refuse to receive it, and the railroad remained liable for so much of said cotton as the consignee refused to receive; and if said cotton was burnt, it is the loss of the Mobile & Girard Railroad, and the defendant is not liable therefor.

[There were other charges asked and refused, but the exception taken to said refusal abandoned.]

The above requests the Court refused to give in charge to the jury, and counsel for defendant excepted.

The jury found for the plaintiff sixteen hundred and ninety-two dollars and thirteen cents. Whereupon, counsel for defendant tendered his bill of exceptions, assigning as error, the refusal to charge as requested above.

R. J. Moses, for plaintiff in error.

L. T. Downing, *contra.*

*By the Court.*—Stephens, J., delivering the opinion.

The railroad and the dray line, were both common carriers, serving the public; and as such, each had its own appropriate duty to perform—the one in delivery, and the other in receiving the cotton for continued transportation to its ultimate destination. The railroad, having finished its part of the transportation when it had carried the cotton to the end of the road, was still bound to turn it over to the next carrier, or take care of it a reasonable time for the purpose of so turning it over. What constitutes a good turning over or delivery from one to the other, so as to discharge the first, is measured by what is needful to be done in putting the successor in full possession of the goods; and no delivery accomplishes this, unless it places the goods where they are easily accessible to the next carrier who is to take them.

In delivering to a *consignee,* the carrier is discharged whenever he does what the consignee accepts as a delivery, but no acceptance of a less delivery by the next carrier can release him from the full duty which he owes to the customer, of placing the article in the actual control of his successor in the transportation. But yet, the next carrier may bind

himself, although the predecessor can not discharge himself by a less delivery than this; for while the carrier can not put off any of his duties to the customer, he may assume new ones. It does not follow, therefore, that the liability of the dray line began only when that of the railroads ceased, and hence the Court properly refused to give the charges requested, concerning the cessation of liability on the part of the railroad. While the cessation of liability on the one part, would be the beginning of liability on the other, in the absence of any stipulations between the two carriers varying the character of the delivery, yet the test fails when there are such stipulations. It was contended that there were such stipulations in this case, and some of the evidence looks in that direction. If the dray line accepted less than a legal delivery, they are bound by it, while the railroad is not discharged by it. The agent of the dray line, however, could not have accepted for them a delivery out of the course of trade, that is to say, less than a legal delivery, without a special authority to do so. From this view of the case, we think the second charge asked in relation to the general rule as to what delivery the dray line was obliged to accept, ought to have been given, while the first and third desiring a test from the cessation of liability on the part of the railroad, were properly refused.

Judgment reversed.